**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 8:11CV14** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **FINDINGS OF FACT** |
| | ) | **AND CONCLUSIONS OF LAW** |
| **$45,000.00 IN UNITED STATES CURRENCY,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter came on for trial before the Court on November 16, 2012. The United States was represented by Assistant United States Attorney Nancy A. Svoboda, and the Claimant, Carlos Martins, was represented by his attorney, Joseph L. Howard. In addition to the testimony and evidence received at trial, the Court took judicial notice of the proceedings before Magistrate Judge Gossett held pursuant to the Claimant's Motion to Suppress. For the reasons discussed below, the Claimant's Motion to Reconsider the Order on Motion to Suppress will be denied, and the Defendant property will be forfeited to the Plaintiff, the United States of America.

**I.  Claimant's Motion to Reconsider Order on Motion to Suppress**

This Court previously denied the Claimant's Motion to Suppress, in which he sought to exclude the seized $45,000.00 in United States currency as evidence, and to exclude all statements he made to law enforcement while in custody. (See Claimant's Motion at Filing No. 26, Magistrate Judge Gossett's Findings and Recommendation at Filing No. 40, Transcript of Proceedings of the hearing on the Motion to Suppress ("TPMS") at Filing No. 43, and Order adopting the Findings and Recommendation at Filing No. 45.) The Claimant now asks the Court to reconsider the denial of the Motion to Suppress (see Filing No. 61),

arguing that Deputy Douglas County Sheriff David J. Wintle, who made the traffic stop in question on August 2, 2012, was not credible and had no cause to initiate the stop.

At the hearing on the Motion to Suppress, Deputy Wintle testified that he was headed west-bound on Interstate 80 on August 2, 2010, and had difficulty identifying the rear license plate on Martins's Cadillac Escalade vehicle.  Wintle testified that the plate was an unusual specialty plate, and appeared to be in a bracket that obscured the name of the issuing state.  (TPMS at 15.)  As Deputy Wintle drove closer to the vehicle in an attempt to identify information on the plate, he guessed it to be a Utah plate.  (*Id*. at 17.)  Martins then changed lanes, moving to the far right lane, and left the interstate at the Center Street exit.  (*Id*. at 16.)  Deputy Wintle followed and stopped the Martins vehicle.  Deputy Wintle determined that a back-up camera mounted by the plate had obscured his view of lettering identifying the issuing state.  (*Id*. at 18.)  Magistrate Judge Gossett concluded that Deputy Wintle's stop of the vehicle was objectively reasonable.  (*Id*. at 55-59.)

At the trial on November 16, 2012, Deputy Wintle testified that he was able to read the plate and tell what state issued the plate when he pulled within 100 feet of the vehicle. (Trial Transcript ("TT"), Filing No. 59 at 31-32.)  He thought it odd that a car from Utah would pull off the interstate at the Center Street exit, since that exit was not one that provided ready access to gas and other supplies for interstate drivers.  (*Id*. at 15.)

Martins acknowledges that Neb. Rev. Stat. § 60-399(2) provides: "All letters, numbers, printing, writing, and other identification marks upon such [license] plates . . . shall be kept clear and distinct and free from grease, dust, or other blurring matter, so that they shall be plainly visible at all times . . . ."  Exhibits 2, 3, and 4 received at the hearing

2

on the Motion to Suppress, and Martins's own Exhibit 102 received at trial, show his rear license plate in a bracket, with a back-up camera mounted above the plate. The camera obscures the top half of the name of the issuing state: "Utah." The photos appear to be taken at a direct angle, *i.e.*, at the same height as the plate. Anyone viewing the license plate from an angle above the plate, *e.g.*, any driver of another vehicle, would see less than half the lettering identifying the issuing state.

This Court has reviewed Deputy Wintle's testimony from the hearing on the Motion to Suppress, and from the trial, and finds no material discrepancies. The undersigned judge also had the opportunity to hear Deputy Wintle testify at trial and found him to be credible. The United States Court of Appeals for the Eighth Circuit has "repeatedly held that ' any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver.'" *United States v. Mallari*, 334 F.3d 765, 766 (8th Cir. 2003), quoting *United States v. Jones*, 275 F.3d 673, 680 (8th Cir.2001). "An officer is justified in stopping a motorist when the officer 'objectively has a reasonable basis for believing that the driver has breached a traffic law.'" *Id*. at 766-77, citing *United States v. Thomas*, 93 F.3d 479, 485 (8th Cir.1996).

Deputy Wintle's stop of the Martins vehicle for a partially obscured plate was objectively reasonable, and the Claimant's Motion to Reconsider Order on Motion to Suppress (Filing No. 61) will be denied.

**II.  Findings of Fact**

1.  The Defendant is $45,000.00 in United States currency. The money was seized within the District of Nebraska and is presently in the custody of the U.S. Marshals Service.

3

2. The Defendant currency came into the custody of law enforcement by way of the traffic stop conducted by Deputy Sheriff David J. Wintle, of the Douglas County Sheriff's Office, on August 2, 2010. The driver and sole occupant of the stopped vehicle was the Claimant, Carlos Martins.

3. As described in more detail in section I, above, Deputy Wintle was headed west-bound on Interstate 80 in Omaha, Nebraska, on August 2, 2010, and observed Martins's vehicle also headed west. Wintle had difficulty identifying the rear license plate on Martins's vehicle, because it was a specialty plate and the name of the issuing state was obscured. As Deputy Wintle drove closer to the vehicle in an attempt to identify information on the plate, he guessed that it to be a Utah plate. Martins then changed lanes, moving to the far right lane, and left the interstate at the Center Street exit. Deputy Wintle followed and stopped the Martins vehicle. Deputy Wintle determined that a back-up camera mounted above the plate had obscured his view of the lettering identifying the issuing state.

4. Deputy Wintle had extensive training in criminal interdiction, including interdiction involving controlled substances, and had extensive experience in criminal interdiction along Interstate 80. (TT at 7-11.) Deputy Wintle thought it was unusual that a vehicle from Utah would take the Center Street exit, because that exit did not provide ready access to fuel or other products and services generally sought by interstate travelers. (TT at 15.) Deputy Wintle also found Martins's agitated demeanor to be unusual, particularly with respect to Deputy Wintle's request that Martins exit his vehicle and come to the cruiser to talk. (TT at 16-18.)

5. Deputy Wintle was a certified K-9 officer, with six years of experience. He had his canine "Kubo" with him at the time of the stop. Kubo was trained to detect the odor of certain controlled substances, including marijuana. With Martins in the cruiser, Wintle led Kubo around the Martins vehicle. At the rear of the vehicle, Kubo put his front paws up on the bumper and alerted, then moved toward the passenger side of the rear of the car and sat in a position that Deputy Wintle recognized as an "indication." The time that elapsed between Deputy Wintle leaving Martins in the cruiser, and Kubo "indicating," was at most two minutes. (TPMS at 6-12, 21-23.)

6. Based on Kubo's alert and indication, Deputy Wintle conducted a search of the vehicle once a back-up officer arrived. Deputy Wintle found a small rubber-banded bundle of money and some loose cash in a pocket compartment of a door; a sleeping pad in the back seat; two coolers in the back of the vehicle that, based on his training and experience, he perceived smelled of raw marijuana; and two vacuum-sealed bags of rubber-banded bundles of United States currency in a lock-box inside a storage area on the passenger side of the bed of the vehicle. The cash in the two vacuum-sealed packages totaled $45,000.00, and was seized. It is the Defendant currency that is the subject of this action. (TPMS 23, TT 18-26, 33.)

7. After seizing the currency, Deputy Wintle deployed Kubo in conducting a discretionary sniff of the currency at a locker room in the Sheriff's office. Deputies placed circulated and uncirculated currency in lockers in the locker room. Kubo entered the locker room and did not indicate to any items. Deputy Wintle then removed Kubo from the room, and two deputies placed the seized currency into one of the lockers. Deputy Wintle then

brought Kubo back into the locker room, and Kubo indicated to the odor of controlled substances at the locker where the seized currency was hidden. (TT 27-29.)

### III. Conclusions of Law

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1345, 1355, and 1395, and pursuant to 21 U.S.C. § 881. Venue in this district is proper under 28 U.S.C. § 1391

2. Certain currency is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6): "All moneys, . . . furnished or intended to be furnished by any person in exchange for a controlled substance . . ., all proceeds traceable to such an exchange, and all moneys, . . . used or intended to be used to facilitate any violation of this subchapter."

3. "Since the enactment of the Civil Asset Forfeiture Reform Act of 2000, the burden is on the government to establish, by a preponderance of the evidence, that seized property is subject to forfeiture. 18 U.S.C. § 983(c)(1). Forfeiture is warranted under 21 U.S.C. § 881 when the government establishes a substantial connection between the property and a controlled substance offense. 18 U.S.C. § 983(c)(3)." *United States v. $124,700 in U.S. Currency*, 458 F.3d 822, 825 (8th Cir. 2006) (internal quotation marks omitted).

4. "In a forfeiture action under § 881, the United States bears the initial burden of establishing by a preponderance of the evidence that the property is substantially connected to drug trafficking. 18 U.S.C. § 983(c)(1) and § 983(c)(3). Circumstantial evidence can be used by the United States to establish its burden of proof." *United States v. $84,615 in U.S. Currency*, 379 F.3d 496, 501 (8th Cir. 2004) (citation omitted). "[T]he

government does not have to show evidence of, or trace the money to, a particular narcotics transaction." *United States v. U.S. Currency in the Amount of $150,660.00*, 980 F.2d 1200, 1205 (8th Cir. 1992) (citations omitted).

5. "Carrying a large amount of cash wrapped in rubber bands while traveling on the highway 'is 'strong evidence' of a connection to drug activity.'" *United States v. $46,000.00 in U.S. Currency*, 2007 WL 1342542,*6 (D. Neb., 2007) (quoting *$124,700 in U.S. Currency,* 458 F.3d at 826, and *$84,615 in U.S. Currency*, 379 F.3d at 501-02). "A common sense reality of everyday life is that legitimate businesses do not transport large quantities of cash rubber-banded into bundles and stuffed into packages in a backpack. They don't, because there are better, safer means of transporting cash if one is not trying to hide it from the authorities. . . . Legitimate businesses wire cash between bank accounts or they convert large sums of cash into cashier's checks. . . . As a matter of common knowledge and common sense, legitimate businesses do not transport this much cash by couriers. The same is not true of drug rings, which commonly do utilize couriers to transport in cash their ill-gotten gains, which can be huge." *U.S. v. $242,484.00*, 389 F.3d 1149, 1161 (11th Cir. 2004) (*en banc*).

6. The manner in which the Defendant currency was wrapped and concealed supports the theory that it was either used or intended to be used to facilitate a drug transaction. The rubber-banded bundles were found in vacuum-sealed plastic bags which, in turn, were in a lockbox in a storage compartment in the bed of Martins's vehicle. Transporting money in vacuum-sealed bags is "a common ploy to mask odors such as might be detected by dog searches." *$84,615.00 in U.S. Currency*, 379 F.3d at 502. The

Eighth Circuit has "adopted the common-sense view that bundling and concealment of large amounts of currency, combined with other suspicious circumstances, supports a connection between money and drug trafficking." *124,700 in U.S. Currency*, 458 F.3d at 826.

7. The United States has demonstrated, by a preponderance of the evidence, that the Defendant property is substantially connected to drug trafficking.

8. "An innocent owner's interest in property is protected under civil forfeiture statutes. A claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." 18 U.S.C. §983(d)(1). In order to prevail on an innocent owner defense, the claimant must establish not only his ownership interest, but also that he "did not know of the conduct giving rise to forfeiture" or "upon learning of the conduct giving rise to the forfeiture, [he] did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A). Martins did not appear at the trial or offer any testimony. The exhibits he offered do not support an innocent owner theory. Instead, Martins merely criticizes Deputy Wintle for not conducting a more thorough investigation to establish Martins's status as an innocent owner, suggesting that a review of Martins's "portfolio" would have established such status.

9. Martins has not shown by a preponderance of the evidence that he was an innocent owner of the Defendant currency.

10. The Defendant property is forfeitable to the United States.

IT IS ORDERED:

1. The Claimant's Motion to Reconsider Order on Motion to Suppress (Filing No. 61) is denied;

2. The Defendant property is forfeited to the Plaintiff, the United States of America; and

3. A separate Judgment will be entered.

DATED this 21st day of December, 2012.

                                              BY THE COURT:

                                              s/Laurie Smith Camp
                                              Chief United States District Judge